McCORD, Chief Judge.
This is an appeal from final judgment entered upon a jury verdict denying the petition for dower of appellant Dorothy E. Howe, widow of Howard F. Howe, deceased. The issue in the court below was whether or not appellant had waived her right to dower by an antenuptial agreement entered into between her and her deceased husband. They were married after a courtship of approximately three months, and decedent died intestate six months later as the result of an accident. It was the third marriage for each party. Appellant had 20 to 22 years experience as a legal secretary and had worked for approximately four years, around 1963-67, for a member of the law firm of which the attorney who drafted the agreement is a member. The agreement recited that decedent owed real and personal property valued in excess of $500,-000 and stated that should the marriage be dissolved within two years from the date of the marriage ceremony, appellant would accept the sum of $20,000 in lieu of her rights in and to the decedent’s real and personal property including “dower, homestead and all other statutory rights and all other rights as widow or heir of Howard.” The agreement further provided that in any other event she would be entitled to all her rights with the exception that she agreed to accept at the time of the death of Howard, in lieu of any other rights she might have, a life estate in his property “provided only that the estate shall be invested in such manner as to produce a reasonable income.” The issue presented in the trial of the case was whether the phrase “should the marriage be dissolved within two years from the date of the marriage ceremony,” (which appellant contended was ambiguous) was intended by the parties to mean only dissolution of the marriage by divorce or was also intended to mean dissolution by death.
Appellant presented as her only witness in addition to herself the attorney who drafted the agreement. He testified that decedent told him that he wanted to establish an antenuptial agreement, and he originally prepared it from a standard form; that such agreement was a complete waiver of the rights of the wife, and during their conversation it became apparent that decedent did not intend for appellant to make a complete waiver; that the standard agreement was then amended to provide that in the event of dissolution of the marriage within two years, appellant would receive $20,000 and that would be the end of it; that if the marriage lasted beyond two years, decedent was willing then to take his risks under the standard property rights; that decedent considered the chances of dissolution of the marriage would be less after two years; that decedent also discussed his plans for creating an irrevocable trust for some of his children, a further trust which would pay income to him and appellant for life and the remainder to go to the children or possibly to some other entity such as a charity. The attorney further testified as follow's as to decedent’s wishes in the event of his death:
“. . .In the event of his death when there was no dissolution or divorce, as he called it, involved, he would want Dorothy to have all of her rights except that if he got around to establishing a trust, he *1202 did not want her to have her rights to the property but merely a life estate in the property. So we structured a provision in the agreement that preserved the rights of Dorothy Sykes, that she would have subject only to the fact that if the trust was established she would have a life estate in the property if it produced sufficient income.”
The attorney further testified that decedent contemplated establishing such a trust before his death; that paragraph 2A of the instrument dealt with the contingency of the dissolution of marriage (which the attorney testified meant divorce); that sub-paragraph B covered any other event including the potential death of decedent.
Raymond Howe, son of the decedent, testified as follows regarding his first meeting appellant and learning of the marriage:
“This is the first time I have ever met her and she brought up the fact that she says, ‘I know your father has had to work very hard all his life to get where he is today and I want you to know — I want your father to explain to you and your brothers and sisters when it’s time about this contract that your father and I have entered into.’ She said, ‘With this contract, if anything should ever happen to your father or if anything should ever happen to our marriage, I would go out of this marriage just with what I came into it plus a twenty thousand dollars.’ ” (Emphasis supplied)
Ronald Howe, another son of the decedent testified that prior to the marriage, he and his wife had lunch with his father and appellant at which time appellant revealed their marriage plans. He testified that appellant told them “if anything were to happen to the marriage that she would get absolutely nothing out of it.” He further testified that after his father’s death, when they went over to the house to comfort appellant, she stated at that time “that all she wanted out of it was the few personal possessions that she had brought to the house and that there was a little bit of insurance and that’s all that she wanted to get out of it, that they had an agreement and that is the first time I heard of the agreement.” Other witnesses of appellee testified similarly.
The testimony that appellant, contemporaneously with the execution of the antenuptial agreement, stated that under the agreement, if anything happened to decedent, she would receive nothing from the marriage other than the $20,000 stands un-refuted. Although appellant testified in the case, she did not attempt to explain or contradict that testimony. While that testimony as to intent is in conflict with the testimony of the attorney who prepared the agreement, it was the jury’s province to resolve the conflict. It resolved the ambiguity in favor of the decedent’s children and against appellant, finding that appellant had waived her right to dower. The credibility of the testimony and the weight of the evidence are for the jury’s determination. It is not the province of the court to substitute its judgment on factual issues for that of the trier of the facts. Keith v. Amrep Corp., 312 So.2d 234 (Fla. 1 DCA 1975). There is competent substantial evidence which supports the jury’s verdict.
Affirmed.
RAWLS, J., concurs.
BOYER, J., dissents.